# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| v. | * | Criminal No.: RDB-07-0244 |
| TIMOTHY LEE CLARIDY, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE
## TO DEFENDANT'S PRETRIAL MOTIONS

### STANDING[1]

"The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." Rakas v. Illinois, 439 U.S. 128, 132 (1978). "The capacity to claim the protection of the Fourth Amendment depends … upon whether the person who claims the protection … has a legitimate expectation of privacy in the invaded place." United States v. Gray, 491 F.3d 138, 144 (4th Cir. 2007). "The burden of showing a reasonable expectation of privacy in the area searched rests with the defendant." Gray, 491 F.3d at 143 (citing Rawlings v. Kentucky, 448 U.S. 98, 104 (1980)). A subjective expectation of privacy is not enough, the expectation of privacy must be one which the law recognizes as legitimate, in other words, it must be objective. Gray, 491 F.3d at 145. "The ultimate question, therefore, is whether one's claim to privacy from government intrusion is reasonable in light of all the surrounding circumstances." Rakas, 439 U.S. at 152.

---

[1] The Government has asked that Defendant Claridy demonstrate his standing to contest the search of the Porsche Cayenne in this case. Government's Brief at 8, n.4. The Defendant does in fact have standing to challenge the search of the vehicle and will produce evidence to meet this burden at the hearing of this matter.

In <u>Rakas</u>, the Supreme Court decided that passengers in automobiles have no reasonable expectation of privacy in the vehicle. <u>Rakas</u>, 439 U.S. at 150. While making this determination, the <u>Rakas</u> Court looked to such factors as the ownership or property interest in the vehicle, whether the person has exclusive control of the vehicle or its locked compartments, and whether the person had the keys to the vehicle. <u>Rakas</u>, 439 U.S. at 152-56 (concurring opinion). The <u>Rakas</u> Court stressed that no one factor is dispositive of the standing issue and a stated that a reviewing court must look to all of the surrounding facts to determine reasonableness. <u>Rakas</u>, 439 U.S. at 152.

It has been held by the Fourth Circuit that unauthorized drivers of vehicles had no reasonable expectation of privacy and, therefore, lacked standing to challenge a search. <u>United States v. Wellons</u>, 32 F.3d 117 (4th Cir. 1994), <u>cert. denied</u> 513 U.S. 1157 (1995) (citing cases which held there is no standing when the driver of vehicle was an unauthorized driver of rental vehicle or was driving a stolen vehicle). The Fourth Circuit juxtaposed a case decided in the Ninth Circuit wherein the Ninth Circuit found a defendant/driver had a legitimate expectation of privacy in a vehicle because the vehicle was owned by a friend of the defendant/driver and the friend surrendered the keys to the defendant/driver and gave him permission to use it.[2] <u>See</u> <u>Wellons</u>, 32 F.3d at 119 n.2 (<u>citing</u> <u>United States v. Portillo</u>, 633 F.2d 1313 (9th Cir. 1980)).

The Supreme Court, in <u>Rakas</u>, opined that;

> Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the main rights attaching to property is the right to exclude others, and one who owns or lawfully possesses or

---

[2] The Fourth Circuit did not address whether <u>Portillo</u> was the law of the Fourth Circuit, but simply was distinguishing the facts from those of an unauthorized driver of a rental vehicle. <u>Wellons</u>, 32 F.3d at 119 n.2.

2

controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude.

Rakas, 439 U.S. at 143 n.12. The Rakas Court went on to state that,

> [T]he fact that [defendants] were legitimately on the premises in the sense that they were in the car with the permission of its owner is not determinative of whether they had a legitimate expectation of privacy in the particular areas of the automobile searched. It is unnecessary for us to decide here whether the same expectations of privacy are warranted in a car as would be justified in a dwelling place in the analogous circumstances. We have on numerous occasions pointed out that cars are not to be treated identically with houses or Apartments for Fourth Amendment purposes.

Rakas, 439 U.S. at 148.

In United States v. Rusher, 966 F.2d 868 (4th Cir. 1992), cert. denied 506 U.S. 926 (1992), the Fourth Circuit determined that although a defendant is not an owner of a vehicle, if he is the driver and there is no evidence in the record tending to show that he was illegitimately in possession of the vehicle, it follows that he has standing to challenge the search.[3] Rusher, 966 F.2d at 874. In making this determination, the Fourth Circuit relied on a case from the Seventh Circuit which held that, "where [the] government failed to prove that [the] vehicle driven by [the] accused was stolen, [the] accused possessed privacy rights under Fourth Amendment because it was presumed that [the] accused had [the] owner's permission to use vehicle." Rusher, 966 F.2d at 874 (citing United States v. Garcia, 897 F.2d 1413, 1418-19 (7th Cir. 1990)).

Defendant does have a legitimate expectation of privacy in the Porsche Cayenne and will establish his right to challenge the search at the hearing of this matter.

---

[3] Although eight years earlier, the Fourth Circuit held that if a defendant does not testify at a suppression hearing or produce other evidence of an expectation of privacy, and does not establish ownership of a vehicle, that defendant has not met his or her burden to establish standing to contest the search of the vehicle. United States v. Manbeck, 744 F.2d 360, 374 (4th Cir. 1984).

# Rule 41

The Government contends that Rule 41 is inapplicable because "[r]ather than restricting the type of judicial officers before whom federal law enforcement officer[s] must make a search warrant application … Rule 41(b)(1) instead restricts and defines who can make such an application, i.e. federal law enforcement officers and attorneys for the government." Government's brief at 9. In support of its argument, it cites a committee note to a 1972 Amendment to the Rule and a Fifth Circuit opinion, United States v. McKeever, 905 F.2d 829 (5th Cir. 1990).

McKeever is distinguishable from Defendant Claridy's case because in McKeever, "[n]o issue of collusion between state and federal officers in procuring the warrant to avoid Rule 41 is implicated." McKeever, 905 F.2d at 833. Moreover, in McKeever, the facts are distinguishable in that federal officers did not participate in the search until after the local authorities has initiated the search and found evidence of a crime. In Defendant Claridy's case, the federal agents were involved in the "federal investigation" prior to any search which uncovered the fruits of illegality.

McKeever was primarily based on a 1972 Amendment committee note to Rule 41 when the Fifth Circuit was attempting to determine the legislative intent of the Rule. The original panel Opinion, United States v. McKeever, 894 F.2d 712, 715 n.2 (1990), explains this committee note. It provides that,

> The only legislative history relative to this amendment provides: Subdivision (a) is amended to provide that a search warrant may be issued only upon the request of a federal law enforcement officer or an attorney for the government. The phrase "federal law enforcement officer" is defined in subdivision (h) in a way which will allow the Attorney General to designate the category of officers who are authorized to make application for a search warrant. The phrase "attorney for the government" is defined in rule 54. Advisory Committee Note, in

> Communication from the Chief Justice of the United States, H.R.Doc. No. 92-285, 92d Cong., 2d Sess. 43 (April 25, 1974).

Id. at 715 n.2. The Fifth Circuit, in making its decision, departed from the plain language of Rule 41 and based its decision on a scintilla of legislative history that it could find regarding the Rule. In fact, counsel for Defendant Claridy after a thorough search can find no other federal Circuit that has signed on, agreed, or adopted McKeever's rationale regarding the Amendment and committee note since McKeever was decided 17 years ago.

The government argues that it "believes that Claridy mis-interprets the *import* of Rule 41(b)(1)." Government's brief at 9. Defendant Claridy argues that the *import* of the rule is clear from the plain reading of its language.

The Fourth Circuit has previously stated,

> When interpreting a statute we being by examining the statutory language. If the statutory language is unambiguous and within the constitutional authority of the legislature that enacted it, the sole function of the courts is to enforce it according to its terms. When statutory language is ambiguous or does not directly answer the question presented, however, we look to some other source of legislative intent.

Gadsby v. Grasmick, 109 F.3d 940, 952 (1997) (internal citations omitted) (internal quotations omitted). It is a "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant." Kungys v. United States, 485 U.S. 759, 778 (1988). Likewise, it is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." Colautti v. Franklin, 439 U.S. 379, 392 (1979). The Supreme Court has cautioned that "courts should hesitate to interpret statutes in ways that make some of their language mere surplusage." Westfarm Associates Ltd. Partnership v. Washington Suburban Sanitary Com'n, 66 F.3d 669 (4th

Cir. 1995), cert. denied 517 U.S. 1103 (1996) (citing Ratzlaf v. United States, 510 U.S. 135 (1994)).

In Defendant Clarity's case, the Rule 41 is unequivocal in its language. The subsection at issue, Rule 41(b), is entitled "*Authority to Issue Warrant,*" not "*Authority to Apply for a Warrant*," as the government would have it read. Further, the section goes on to prescribe the procedure that the government must follow, i.e., first to seek out a federal magistrate judge with authority in the district to issue the warrant. If a federal magistrate judge is not available, the rule permits the officer to go to a judge of a state court of record to apply for the warrant. There is no ambiguity in this language of the rule. The government's reading of the rule would render the portion of Rule 41(b)(1), *"[a]t the request of a federal law enforcement officer or an attorney for the government a magistrate judge with authority in the district – or if none is reasonably available …"* surplusage and/or inoperative in violation of the most basic rules of statutory construction enunciated by the Supreme Court as outlined above.

Moreover, the government's argument bolsters Defendant Claridy's argument that the police officers were weaving in and out of the state and federal requirements as it was convenient for them, deliberately avoiding the more restrictive terms of the respective laws. If the affiant in Defendant Claridy's case was acting as a local officer when he applied for the warrant, then he was breaking Maryland law when he executed the warrant outside his jurisdiction without any officers from that jurisdiction present when the warrant was executed at 69 Stemmers Run Road. The execution of the warrant outside the officer's jurisdiction was presumably pursuant to the officer's broader federal powers. This is because a Baltimore City Police Officer has no authority to execute

6

extra-territorial warrants without satisfying certain statutory pre-requisites. (See Defendant's Amended Memorandum in Support of Motion to Suppress at pp.5-6).

As the Fourth Circuit in Gadsby recognized, "if the statutory language is unambiguous and within the constitutional authority of the legislature that enacted it, the sole function of the courts is to enforce it according to its terms." Gadsby, 109 F.3d at 952. Defendant Claridy is asking this Honorable Court to do precisely what the Fourth Circuit has already recognized it must do, to enforce the Rule 41 according to its terms.

Respectfully submitted,

*/s/ Ivan J. Bates*
Ivan J. Bates, Esquire (Fed Bar No. 26969)
Bates, May, & Seddiq.
The Equitable Building
10 N. Calvert Street, Suite # 214
Baltimore, Maryland 21202
(410) 814-4600

Counsel for Defendant Claridy

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **13th** day of **December**, 2007, a copy of the foregoing Motion to Adopt Co-Defendant's Motions was mailed first-class, postage pre-paid, United States Mail to Philip S. Jackson, Assistant United States Attorney, 36 South Charles Street, Fourth Floor, Baltimore, Maryland 21201; and Stanley Needleman, Esquire, 1005 N. Calvert Street, Baltimore, Maryland 21202.

*/s/ Ivan J. Bates*
Ivan J. Bates, Esquire