**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TIMOTHY CLARIDY,                              :    **Crim. No. RDB-07-0244**

                      Petitioner,    :    **Civil No. RDB-20-0501**

          v.                              :

UNITED STATES OF AMERICA,                     :

                Respondent.    :

                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**<u>SECOND SUPPLEMENTAL MOTION TO VACATE JUDGMENT</u>**
**<u>UNDER 28 U.S.C. § 2255</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ........................................................................................................1

STATEMENT OF FACTS ..............................................................................................2

     A.    Gladstone's Repeated And Outrageous Police Misconduct ...................................2

          1.    Gladstone's Indictment And Guilty Plea Related To Planting
              Evidence And Conspiring To Conceal His Actions ...................................3

          2.    Additional Misconduct By Gladstone Revealed In Connection
              With Other Officers' Indictments And Plea Agreements ...........................4

          3.    Similar Misconduct By Gladstone Alleged By Litigants And
              Reported In The News After Mr. Claridy's Trial ......................................6

     B.    Gladstone's Indispensable Role In Mr. Claridy's Arrest And Conviction .............7

          1.    Arrest And Alleged Recovery Of Heroin And Handgun...........................8

          2.    Issues At Pretrial Hearing Turned On Gladstone's Credibility .................9

          3.    Gladstone's Critical Role In Mr. Claridy's Trial And Conviction ...........11

ARGUMENT ...........................................................................................................12

I.    MR. CLARIDY'S CONVICTION SHOULD BE VACATED BECAUSE
    GLADSTONE'S EGREGIOUS POLICE MISCONDUCT WAS MATERIAL TO
    THE OUTCOME OF THE PRETRIAL SUPPRESSION HEARING AND
    TRIAL.............................................................................................................14

     A.    Gladstone Committed Egregious And Impermissible Misconduct. .....................15

     B.    The Egregious Misconduct Was Material To Mr. Claridy Being
         Convicted. ...........................................................................................16

          1.    Gladstone More Likely Than Not Committed Egregious
              Misconduct That Was Material To Mr. Claridy's Conviction..................17

          2.    The Lack Of Knowledge Of Gladstone's Egregious Misconduct
              Was Material To The Result At The Pretrial Suppression Hearing
              And At Trial. ......................................................................................20

II.    THE COURT SHOULD, AT A MINIMUM, SCHEDULE AN EVIDENTIARY
    HEARING TO EVALUATE THE IMPACT OF THE NEWLY DISCOVERED
    EVIDENCE OF GLADSTONE'S MISCONDUCT ON MR. CLARIDY'S CASE.........24

CONCLUSION........................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### CASES

*Burley v. Baltimore Police Department*,
    422 F. Supp. 3d 986 (D. Md. 2019) ........................................................................ *passim*

*Coats v. United States*,
    No. CR RDB-09-0333, 2020 WL 2794474 (D. Md. May 29, 2020) ................................12

*Foster v. Vignola*,
    No. CIV.A. GLR-13-3758, 2015 WL 4615905 (D. Md. July 30, 2015) ........................ 6-7

*Hall v. United States*,
    30 F. Supp. 2d 883 (E.D. Va. 1998) ....................................................................12, 14, 17

*Holmes v. United States*,
    No. 4:08-CV-1142 (CEJ), 2011 WL 4445702 (E.D. Mo. Sept. 26, 2011) ........... 20, 22-23

*Humphrey v. United States*,
    888 F.2d 1546 (11th Cir. 1989) ...........................................................................24

*Jones v. United States*,
    No. 4:10-CV-1748 (CEJ), 2010 WL 4681422 (E.D. Mo. Nov. 10, 2010) .......................19

*Thomas v. Gladstone*,
    386 Md. 693 (2005) ...............................................................................................7

*United States v. Atkinson*,
    429 F. Supp. 880 (E.D.N.C. 1977)..................................................................... 15-16, 23

*United States v. Bagley*,
    473 U.S. 667 (1985).............................................................................................20

*United States v. Battle*, Nos. 92-6077, 93-6009,
    1994 U.S. App. LEXIS 11754 (6th Cir. May, 19 1994) ...................................................19

*United States v. Biberfeld*,
    957 F.2d 98 (3d Cir. 1992)....................................................................................24

*United States v. Claridy*,
    No. CRIM. RDB-07-0244, 2007 WL 4554017 (D. Md. Dec. 18, 2007),
    *aff'd*, 601 F.3d 276 (4th Cir. 2010)................................................................................9, 10

*United States v. Espinosa-Hernandez*,
    918 F.2d 911 (11th Cir. 1990) ..................................................................................... 24-25

*United States v. Fisher*,
711 F.3d 460 (4th Cir. 2013) ................................................................. *passim*

*United States v. Fulcher*,
250 F.3d 244 (4th Cir. 2001) ................................................................23

*United States v. Lipowski*,
423 F. Supp. 864 (D.N.J. 1976) ............................................................23

*United States v. MacDonald*, No. 3:75-CR-26-F, 5:06-CV-24-F,
2011 U.S. District LEXIS 107625 (E.D.N.C. Sept. 21, 2011) .........................................24

*United States v. Silvers*,
888 F. Supp. 1289 (D. Md. 1995),
*vacated in part on other grounds* 90 F.3d 95 (4th Cir. 1996)...........................................24

*Williams v. United States*,
500 F.2d 105 (9th Cir. 1974) ................................................................19

## STATUTES

28 U.S.C. § 2255 .................................................................................... *passim*

## OTHER AUTHORITIES

Justin Fenton, *More accuse gun task force of violations: Group of alleged victims place blame on authorities*, Baltimore Sun (Feb. 3, 2018),
https://www.baltimoresun.com/news/crime/bs-md-ci-bates-gttf-victims-20180202-story.html ...................................................................................6

Justin Fenton, *Prosecutor who raised early questions about Gun Trace Task Force officer speaks out*, Baltimore Sun (Dec. 8, 2017),
https://www.baltimoresun.com/news/crime/bs-md-ci-jenkins-webb-20171208-story.html. ...................................................................................7

Jessica Lussenhop, *Rogue Baltimore police unit ringleader Wayne Jenkins sentenced*, BBC News, Baltimore (June 7, 2018), https://www.bbc.com/news/world-us-canada-44402948. ...................................................................................3

Tim Prudente, *Jury Awards $75,000 to man sprayed, yanked down by Baltimore police during riots*, Baltimore Sun (Jan. 24, 2018),
https://www.baltimoresun.com/news/crime/bs-md-ci-lomax-verdict-20180124-story.html. ...................................................................................7

Van Smith, *Bad Seeds*, Baltimore Sun City Paper (Sept. 30, 2014),
https://www.baltimoresun.com/citypaper/bcp-bad-seeds-20140930-story.html. ...............7

U.S. Dep't of Justice, *Former Baltimore Police Sergeant Pleads Guilty to Conspiracy to Deprive Civil Rights for Assisting a Member of the Baltimore Police Gun Trace Task Force by Planting a Gun at the Scene of an Arrest* (May 31, 2019), https://www.justice.gov/usao-md/pr/former-baltimore-police-sergeant-pleads-guilty-conspiracy-deprive-civil-rights-assisting ...............................................................2

## INTRODUCTION

Timothy Lee Claridy ("Mr. Claridy" or "petitioner") hereby moves to set aside the judgment in this case, pursuant to 28 U.S.C. § 2255.

As set forth below, Mr. Claridy was convicted for being a felon in possession of a gun and for intent to distribute heroin following a trial in which essentially all of the evidence of guilt was supplied by the testimony of one person – Keith Gladstone, a now discredited former sergeant in the Baltimore Police Department ("BPD").  Years after Mr. Claridy's trial, substantial evidence has surfaced showing that Gladstone repeatedly planted evidence on criminal defendants and engaged in other acts of severe police corruption.  Gladstone in fact recently pled guilty to charges stemming from an incident in which he planted evidence on a suspect and later conspired to try to cover it up.  Further, a number of Gladstone's former BPD colleagues have recently been indicted on corruption-related charges, and their indictments and plea agreements have identified other instances where Gladstone planted evidence and otherwise acted with extreme dishonesty.

While none of this was known at the time of Mr. Claridy's trial, the newly discovered evidence completely destroys the credibility of Gladstone's testimony, which was uncorroborated and essential to Mr. Claridy being convicted.  As a result, consistent with the approach taken by the Fourth Circuit in *United States v. Fisher*, 711 F.3d 460 (4th Cir. 2013), the Court should vacate Mr. Claridy's conviction under § 2255 as being imposed in violation of his due process rights.  At a minimum, the Court should schedule an evidentiary hearing to fully evaluate whether Mr. Claridy's conviction can be sustained in light of the newly discovered evidence of Gladstone's pervasive misconduct.

## STATEMENT OF FACTS

### A.    Gladstone's Repeated And Outrageous Police Misconduct

Gladstone was a police officer and later sergeant in the BPD from roughly November 1992 to May 2017.  (*See* Indictment at 1-2, *U.S. v. Gladstone*, No. 1:19-cr-00094-CCB (D. Md. filed Feb. 27, 2019) ("Gladstone Indictment") (attached as Ex. 1).)  On February 27, 2019, Gladstone was indicted by a federal grand jury on three counts, respectively of (1) conspiracy to deprive civil rights; (2) conspiracy to commit offenses against the United States; and (3) witness tampering.  (*Id.* at 1.)  On May 31, 2019, Gladstone pled guilty to the first of these counts, admitting to planting evidence on a suspect and subsequently conspiring to lie about it.  (Letter to D. Irwin re: *United States v. Keith Gladstone* at 1, 8-10, May 10, 2019 ("Gladstone Plea Agreement") (attached as Ex. 2).)[1]  The details of Gladstone's misconduct that specifically led to his indictment and guilty plea are set forth below.  In addition, substantial evidence of other misconduct by Gladstone has now surfaced in connection with indictments and guilty pleas of other ex-BPD officers who served with him.  Finally, other similar misconduct by Gladstone has been repeatedly alleged in court and reported by the news since Mr. Claridy's trial.

---

[1]      *See also*, U.S. Dep't of Justice, *Former Baltimore Police Sergeant Pleads Guilty to Conspiracy to Deprive Civil Rights for Assisting a Member of the Baltimore Police Gun Trace Task Force by Planting a Gun at the Scene of an Arrest* (May 31, 2019), https://www.justice.gov/usao-md/pr/former-baltimore-police-sergeant-pleads-guilty-conspiracy-deprive-civil-rights-assisting (summarizing that "Gladstone conspired to deprive [the suspect] of his liberty without the due process of law, and conspired to commit offenses against the United States, specifically to impede, obstruct, and influence an investigation"; noting that Gladstone's guilty plea was entered on May 21, 2019).

1.     Gladstone's Indictment And Guilty Plea Related To Planting Evidence
       And Conspiring To Conceal His Actions

The specific crime for which Gladstone was indicted occurred on March 26, 2014, when

he attempted to help his mentee, notoriously corrupt former BPD sergeant Wayne Jenkins,[2]

escape responsibility for deliberately running over a suspect with his police car.  (Gladstone Plea

Agreement at 8; Letter to R. Burke re: *Carmine Vignola* at 8, June 19, 2019 ("Vignola Plea

Agreement") (attached as Ex. 3).)  After running the man over, Jenkins called Gladstone, who

had been dining with fellow BPD officer Carmine Vignola, asking for help.  (Gladstone Plea

Agreement at 8; Vignola Plea Agreement at 8.)  Gladstone then asked Vignola if he owned a BB

gun, intending to plant such a weapon near the suspect, so as to purportedly justify Jenkins's use

of potentially lethal force against him.  (*See* Gladstone Plea Agreement at 8.)  After Vignola

replied that he did not own such a weapon, he and Gladstone retrieved a BB gun from the home

of BPD detective Robert Hankard, before proceeding to the site where Jenkins had run over the

suspect.  (*Id.* at 8-9; Superseding Indictment at 2, *United States v. Hankard*, 1:20-cr-00017-CCB,

(D. Md. filed Aug. 11, 2020) ("Hankard Superseding Indictment") (attached as Ex. 4).)  Once

---

[2]     Jenkins was the ringleader of the Gun Trace Task Force ("GTTF"), a corrupt unit within
the BPD that was tasked with tracking recovered firearms to curb gun trafficking in the city but
instead regularly stole drugs from suspects and resold them, and planted drugs on innocent
people. *See, e.g.*, Jessica Lussenhop, *Rogue Baltimore police unit ringleader Wayne Jenkins
sentenced*, BBC News, Baltimore (June 7, 2018), https://www.bbc.com/news/world-us-canada-
44402948.  Seven of the eight BPD officers who comprised the GTTF were indicted on
corruption-related charges. *Id.*  Jenkins himself "pleaded guilty in January [2018] and admitted
taking part in at least 10 robberies of Baltimore citizens, planting drugs on innocent people and
re-selling drugs he stole from suspects on an almost daily basis, including heroin, cocaine and
prescription painkillers." *Id.*  He is currently serving a 25-year prison sentence. *See id.*  (*See
generally* 1/2/18 Letter to S. Levin re: *United States v. Wayne Jenkins,* Cr. No. 17-106 and Cr.
No. 17-638 (Jenkins's plea agreement pleading guilty to, *inter alia*, multiple racketeering
charges, robber, falsification of records and deprivation of rights) (attached as Ex. 8).)  It appears
that Gladstone was Jenkins's mentor, and that the two regularly worked together and made
arrests together.  *See Burley v. Balt. Police Dep't*, 422 F. Supp. 3d 986, 998 (D. Md. 2019).

there, Gladstone placed the BB gun near the suspect's truck and pretended to "find" it there,

relaying to officers at the scene that "it's over by the truck."  (Gladstone Plea Agreement at 9.)

After other officers recovered the weapon, the suspect was detained on charges including

"possession, use and discharge of a gas or pellet gun."  (Gladstone Plea Agreement at 9.)

Jenkins then submitted a false statement about the probable cause for the suspect's arrest, and the

man was not ultimately cleared of charges until January 2015, nearly a year later.  (*Id.*)

Several years later, after Jenkins and six other officers had been arrested on racketeering

charges stemming from the GTTF scandal, Gladstone and Vignola arranged to secretly meet to

discuss their involvement in the March 26, 2014 incident.  (*Id.* at 9-10; Vignola Plea Agreement

at 9-10.)  The two spoke using their wives' cell phones to set up the meeting, so as to avoid

detection, and eventually spoke in a YMCA swimming pool so that Gladstone could verify that

Vignola was not wearing a wire.  (Gladstone Plea Agreement at 9-10.)  Gladstone then instructed

Vignola on how, if he was brought in for questioning, to lie about their and Hankard's

involvement in the incident.  (*Id.*)  Testifying before a grand jury in February 2019, Vignola

proceeded to lie about the incident, concealing the origin of the BB gun as instructed by

Gladstone.  (*See id.* at 10-16.)

### 2.   Additional Misconduct By Gladstone Revealed In Connection With Other Officers' Indictments And Plea Agreements

Additional police misconduct by Gladstone has now been identified in connection with

the indictment of and guilty pleas by several of his former BPD colleagues.  For example, it is

now known that in February 2009, Gladstone and his former colleagues Victor Rivera and Ivo

Louvado misappropriated and profited from the sale of cocaine that had been confiscated from a

suspect by the BPD.  (*See* Letter to S. Mercer re: *United States v. Victor Rivera* at 8-9, Mar. 19,

2020 ("Rivera Plea Agreement") (attached as Ex. 5).)  After 41 kilos of cocaine had been turned

in to the BPD's evidence unit following a search, Gladstone, Louvado and Rivera discovered an additional three kilos in a van that had been used for surveillance.  (*Id.* at 9.)  Instead of turning in the additional cocaine in, the three "agreed to sell the cocaine and split the proceeds from its sale," and evidentially shared the profits after Rivera engaged an informant to sell the drugs on the street.  (*Id.* at 9.)

In addition, a federal indictment against Hankard filed in August 2020 alleges that Gladstone planted cocaine in a suspect's vehicle, laying the groundwork for the man's arrest and improper conviction.  (Hankard Superseding Indictment at 6-9.)  According to the indictment, in September 2015, Gladstone, Hankard and Vignola (along with others) went to a motel where the suspect was staying and arrested him outside in his pickup truck.  (*Id.* at 6.)  While Hankard and Vignola searched the truck, Gladstone and others entered the motel room where the suspect had been staying, without a warrant, and found a woman there and heroin and cocaine that appeared intended for sale.  (*Id.*)  After Gladstone learned that no drugs were found in the suspect's truck, he took some of the cocaine from the motel room and asked Hankard if he was okay with planting it in the truck so as to justify arresting the suspect and entering into the motel room.  (*Id.* at 6-7.)  Hankard agreed and Gladstone proceeded to plant the evidence, which was then recovered by a different officer, and used in conjunction with sworn false statements by Hankard to arrest the man and secure a guilty plea, resulting in an initial ten-year prison sentence that was later reduced.  (*Id.* at 7-9.)

3.    <u>Similar Misconduct By Gladstone Alleged By Litigants And Reported In The News After Mr. Claridy's Trial</u>

According to court statements and news reports issued after Mr. Claridy's trial, Gladstone engaged in substantial additional police misconduct over the course of his BPD career, often alongside his mentee Jenkins.  These incidents are briefly summarized here.[3]

- In April 2010, Gladstone, Jenkins and others allegedly ambushed two men while wearing plain clothes and wielding guns, prompting the men to fear they were being robbed and speed away before driving through an intersection and killing a bystander.  *See Burley*, 422 F. Supp. 3d at 996.  Gladstone and others then allegedly planted heroin in the defendants' vehicle, which led to the men later pleading guilty to drug possession and manslaughter before having their convictions "vacated, after it was determined that the underlying federal charges were unfounded and the product of police corruption."  *Id.*  In a resulting civil suit brought by the men, the vast majority of the plaintiffs' claims against Gladstone, including violation of due process, malicious prosecution and abuse of process, survived a motion to dismiss before the suit was settled last year.  *See id.* at 997, 1036.

- In November 2010, Gladstone and Jenkins allegedly arrested a man (Jamal Walker) during a traffic stop and then went to his home attempting to break in.  *See Burley*, 422 F. Supp. 3d at 999.  Other police arrived after Walker's wife noticed the break-in attempt and set off a silent alarm, but Gladstone and Jenkins sent the other police away so that they could purportedly search the home themselves.  *See id.*  The charges against Walker were later dropped "once the inconsistencies in Jenkins's account came to light."  *Id.* (citation omitted).  It additionally appears that Gladstone and Jenkins confiscated $40,000 from Walker's car but kept half of it and reported only $20,000 seized.[4]

- In May 2012, Gladstone participated in an arrest in which a different officer made a false statement to obtain a search warrant for the suspect's home.  *See Foster v. Vignola*, No. CIV.A. GLR-13-3758, 2015 WL 4615905, at *2 (D. Md. July 30,

---

[3]    Although Gladstone has not (to petitioner's knowledge) admitted to engaging in the misconduct discussed in this section, these events have been substantially confirmed by news reports and constitute important additional evidence that Gladstone repeatedly planted evidence and secured false arrests.  The probative value of the misconduct described in this section could potentially be explored at an evidentiary hearing if so ordered.

[4]    *See* Justin Fenton, *More accuse gun task force of violations: Group of alleged victims place blame on authorities*, Baltimore Sun (Feb. 3, 2018), https://www.baltimoresun.com/news/crime/bs-md-ci-bates-gttf-victims-20180202-story.html.

2015) (granting summary judgment to the defendant officers in later civil suit). The attesting officer's statement was then "direct[ly] contradict[ed]" by video footage, and the criminal case was eventually dropped, *id.*, but not before the man "was indicted and held in jail for 197 days."[5]

- In March 2014, a prosecutor dismissed a criminal case involving Gladstone and Jenkins after it was revealed that "video camera footage taken of a search of a vehicle 'contradicted the sworn statement of probable cause submitted by the officers.'"  *See Burley*, 422 F. Supp. 3d at 999-1000 (citation omitted). Specifically, the footage showed that Jenkins did not find drugs in the suspect's vehicle, contradicting what was said in a different officer's statement of probable cause.[6]

- In May 2015, Gladstone was caught on video grabbing a man who had been protesting the Freddie Gray killing by the hair and pulling him down to the concrete.[7]  The man brought a civil rights suit against Gladstone and another officer, and was awarded $75,000 by the jury.  *Id.* at 999.[8]

### B.   Gladstone's Indispensable Role In Mr. Claridy's Arrest And Conviction

From initiating investigation to testifying at the pretrial hearing and trial, Gladstone was

indispensable to Mr. Claridy being arrested, convicted and sentenced to 20 years in prison.

---

[5]      Van Smith, *Bad Seeds*, Baltimore Sun City Paper (Sept. 30, 2014), https://www.baltimoresun.com/citypaper/bcp-bad-seeds-20140930-story.html.

[6]      *See* Fenton, *Prosecutor who raised early questions about Gun Trace Task Force officer speaks out*, Baltimore Sun (Dec. 8, 2017), https://www.baltimoresun.com/news/crime/bs-md-ci-jenkins-webb-20171208-story.html.  This report states that Gladstone led the raid on the suspect's home after the false statement was used to obtain a search warrant; it is not clear to what extent Gladstone was otherwise involved.  *See id.*

[7]      Tim Prudente, *Jury Awards $75,000 to man sprayed, yanked down by Baltimore police during riots*, Baltimore Sun (Jan. 24, 2018), https://www.baltimoresun.com/news/crime/bs-md-ci-lomax-verdict-20180124-story.html.

[8]      Gladstone also was sued in 2003 for allegedly accosting, assaulting and falsely arresting a man the previous year.  *See Thomas v. Gladstone*, 386 Md. 693, 696 (2005) (discussing underlying facts when deciding appeal related to attorneys' fees).  Most counts were dismissed or decided in Gladstone's favor on summary judgment, but Gladstone was found liable for abuse of process and forced to pay $2500 in damages.  *Id.* at 698.  Mr. Claridy's counsel cross-examined Gladstone about this judgment at Mr. Claridy's trial, and Gladstone denied having committed the underlying conduct.  (7/1/08 Trial Tr. (ECF No. 82) 151:13-153:17.)

1.    Arrest And Alleged Recovery Of Heroin And Handgun

Gladstone arrested Mr. Claridy during a traffic stop on May 22, 2007, after allegedly

spending the previous week surveilling Mr. Claridy and his girlfriend, Flora Jones.  (*See* 6/30/08

Trial Tr. (ECF No. 81) 96:1-97:7 (traffic stop and arrest); *id.* 67:19-78:20, 87:12-93:3

(surveillance).)  Gladstone claims that during this surveillance he saw Mr. Claridy and Ms. Jones

engage in hand-to-hand drug transactions and that he had tracked them to a townhouse located at

69 Stemmers Run Road, in Essex, Maryland (the "Stemmers Run house").  (*See id.* 67:19-23,

69:12-70:16, 72:5-73:10 (alleged transactions); *id.* 87:12-89:22 (Gladstone and BPD officer

William Bearde tracking Ms. Jones to Stemmers Run).)[9]  After arresting Mr. Claridy and finding

$7,999 in cash in Mr. Claridy's car, which Mr. Claridy claimed was from strip clubs (*see id.*

100:23-101:16, 102:2-12), Gladstone drove Mr. Claridy to the parking lot of a police station and

continued to question him (*id.* 102:19-103:6).  Gladstone claims that Mr. Claridy denied

knowledge of the Stemmers Run house until Gladstone brought Mr. Claridy to a staging location

near the house.  (*See id.*)  Then, according to Gladstone, Mr. Claridy admitted to residing at the

house, provided a key and confessed to having a loaded firearm in an upstairs bedroom closet.

(*Id.* 103:9-25.)

At the Stemmers Run house, Gladstone left Mr. Claridy downstairs with a different

officer, DEA Special Agent Bernard Malone, while he purportedly searched upstairs.  (*See*

---

[9]    Gladstone applied for and received a warrant from Judge Charles Chiapparelli to search
Mr. Claridy's car and the Stemmers Run house on the evening of May 21, 2007, before arresting
Mr. Claridy the next day.  (*See, e.g.*, 6/30/08 Trial Tr. (ECF No. 81) 93:7-16, 94:11-18.)  Mr.
Claridy challenged the validity of this warrant in a pretrial motion, which the Court denied as
further explained below.

7/1/08 Trial Tr. (ECF No. 82) 126:14-127:16.)  Gladstone testified at trial that Malone then

summoned him back downstairs, whereupon Mr. Claridy told both officers that 100 grams of

heroin and a gun were located in an upstairs bedroom closet.  (*Id.* 126:21-127:12.)[10]  Gladstone

claims that he then searched the closet and found 100 grams of heroin and a loaded handgun.

(*Id.* 129:2-130:9.)[11]  In subsequent testing, no fingerprints were found on the gun that Gladstone

purportedly found at the Stemmers Run house or its cartridges.  (*Id.* 130:16-23.)  The packaging

of the heroin allegedly recovered at the house was never tested for fingerprints.  (*Id.* 133:4-13.)[12]

## 2.    Issues At Pretrial Hearing Turned On Gladstone's Credibility

Before trial, "Mr. Claridy filed a Motion to Suppress Evidence (Paper No. 12) on June

15, 2007 and a Motion to Suppress Tangible Evidence, Derivative Evidence and Statements

(Paper No. 24) on November 20, 2007."  *United States v. Mr. Claridy*, No. CRIM. RDB-07-

0244, 2007 WL 4554017, at *2 (D. Md. Dec. 18, 2007), *aff'd*, 601 F.3d 276 (4th Cir. 2010).  Mr.

Claridy challenged Gladstone's decision to seek the search warrant from a state judge rather than

a federal magistrate judge as required by Criminal Rule of Procedure 41(b), and also the validity

of the *Miranda* warnings Gladstone provided, which were only given orally, even though

Gladstone had taken Mr. Claridy to the parking lot of a police station where a paper form would

have been available.  (*See, e.g.*, 12/17/07 Hr'g Tr. (ECF No. 78) 88:10-22. 94:7-97:16.)  Mr.

Claridy also adopted Ms. Jones's motion challenging probable cause for the search warrant, with

---

[10]    Gladstone's story has not been consistent on this issue, as explained below.

[11]    Gladstone further claims that he later also found a digital scale and auto insurance
paperwork addressed to Mr. Claridy in the kitchen of the Stemmers Run house.  (7/1/08 Trial Tr.
(ECF No. 82)136:4-19 (paperwork), 142:7-25 (scale).)

[12]    Gladstone testified that he has "submitted drugs in the past for fingerprinting" but did not
do so here because "Mr. Claridy told me that the heroin was his."  (7/1/08 Trial Tr. (ECF No. 82)
134:2-12.)

the defendants arguing that the identity of an alleged confidential informant should have been disclosed because the informant was integral to supplying the basis for securing a search warrant given Gladstone's vague and uncorroborated statements in his affidavit supporting the warrant application.  (*See id.* 74:11-17, 75:6-76:7; *see also id.* 84:3-14, 85:6-24 (Mr. Claridy's counsel challenging the reliability of confidential informant by pointing out that Gladstone's statements of probable cause were generalized and uncorroborated).)  Ms. Jones's counsel in fact suggested that Gladstone lied in applying for the search warrant and that there really was no informant, pointing out that Gladstone had suspiciously contended that he lost his notes from his call with the supposed informant.  (*See id.* 77:10-78:4.)

After hearing Gladstone's testimony at the hearing, the Court denied these motions, in large part because it found no reason to question Gladstone's credibility.  (*See id.* 42:11-14 (finding "no basis for a *Franks* hearing" and "absolutely no indication of willful misrepresentations"); *id.* 79:22-80:12 (the Court saw "no basis to contend that CS-1 doesn't exist" and there was accordingly "no basis" to order the informant to be identified); *id.* 87:20-88:10 (finding the informant reliable to establish probable cause based on Gladstone's testimony about his surveillance); *id.* 92:4-25 (finding "no basis for me to disbelieve Detective Gladstone," who the Court thought "testified candidly" regarding the *Miranda* warnings); *see also id.* 78:5-11 (the Court stating to Ms. Jones's counsel that "to suggest that someone has manufactured a confidential source is somewhat troubling to me").)  *See also Claridy*, 2007 WL 4554017, at *4 (reiterating finding that "there was ample evidence to support a finding of probable cause, both from reliable informants and corroboration by the HIDTA task force's surveillance").[13]

---

[13]    As to seeking the warrant from a state judge, the Court held that any technical violation of Federal Rule of Criminal Procedure 41(b) did not prejudice Mr. Claridy.  (*See* 12/17/07 Hr'g Tr. (ECF No. 78) 116:2-117:25.)  *See also Claridy*, 2007 WL 4554017, at *4.

Accordingly, none of the evidence recovered from executing the search warrant against Mr. Claridy, including his alleged confession, was suppressed.

> 3.    Gladstone's Critical Role In Mr. Claridy's Trial And Conviction

Mr. Claridy and Ms. Jones were tried jointly in a three-day trial from June 30 to July 2, 2008.  Gladstone was the only witness who testified regarding his surveillance and arrest of Mr. Claridy and the subsequent searches of Mr. Claridy's car and the Stemmers Run house.[14] Crucially, Malone – the only other person who allegedly heard Mr. Claridy's critical confession to possessing the heroin – did not testify.  However, the government highlighted the alleged confession as critical evidence in opening statements, telling the jury that it was among facts that were "in a nutshell . . ., what this case is all about."  (6/30/08 Trial Tr. (ECF No. 81) 44:14-18.) The government did not introduce nor provide photographs of Mr. Claridy conducting alleged drug transactions or provide the testimony of anyone other than Gladstone who supposedly witnessed them.  And as noted above, the government did not provide fingerprint evidence linking the heroin or handgun allegedly found at the Stemmers Run house to Mr. Claridy, since no such fingerprint evidence existed.

On July 2, 2008, based essentially entirely on Gladstone's testimony, the jury found Mr. Claridy guilty of (1) conspiracy to distribute heroin in violation of 21 U.S.C. § 846; (2) possession with intent to distribute heroin in violation of 21 U.S.C. § 841; and (3) possession of a

---

[14]    The prosecution called several additional witnesses, but none provided testimony that substantiated Gladstone's account of the arrest and searches.  The only other law enforcement officials who testified were Bearde, whose testimony only discussed surveilling Ms. Jones to the Stemmers Run house (*see* 7/1/08 Trial Tr. (ECF No. 82) 242:17-266:10); and Special Agent Alan Boroshok of the ATF, who testified only that the gun purportedly recovered from the Stemmers Run house had traveled in interstate commerce (*see* 6/30/08 Trial Tr. (ECF No. 81) 80:21-82:15).  Two other witnesses testified:  Barbara Bream, who testified that Ms. Jones was the lessee of the Stemmers Run house (7/1/08 Trial Tr. (ECF No. 82) 116:21-118:25); and Theresa DeAngelo, a drug analyst with the BPD (7/2/08 Trial Tr. (ECF No. 84) 378:1-390:25).

firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  On September 24, 2008, the
Court sentenced Mr. Claridy to a concurrent term of 240 months imprisonment after finding that
he was an armed career criminal.

From the time of his arrest through today, Mr. Claridy has maintained that he is innocent
of the charges for which he was convicted.  For example, Mr. Claridy believes that Gladstone
made false statements in securing a search warrant for Mr. Claridy's car and the Stemmers Run
house.  Mr. Claridy denies confessing to possessing the heroin and handgun allegedly found in
the upstairs closet at the house.  Mr. Claridy maintains that he never possessed these items, and
that Gladstone instead planted them while Mr. Claridy was being held downstairs at the house
with Malone.[15]

## **ARGUMENT**

"Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct
his sentence" where, *inter alia* "the sentence was imposed in violation of the Constitution or laws
of the United States" or "is otherwise subject to a collateral attack."  *Coats v. United States*, No.
CR RDB-09-0333, 2020 WL 2794474, at *3 (D. Md. May 29, 2020).  When filing a § 2255
petition to vacate, set aside, or correct a sentence, a petitioner "bears the burden of proving his
grounds for collateral attack by a preponderance of the evidence."  *Hall v. United States*, 30 F.
Supp. 2d 883, 889 (E.D. Va. 1998) (citing, *e.g.*, *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir.
1967)).  The Fourth Circuit has held that § 2255 petitions should be granted when egregious
police misconduct played a material role in securing a guilty plea and thereby resulted in a

---

[15]     Petitioner will provide a supplemental affidavit setting forth these and other relevant
facts.

violation of constitutional due process.  *Fisher*, 711 F.3d at 465-67.  The same principle should apply to criminal convictions secured after trial, as set forth below.

In *Fisher*, the defendant filed a § 2255 petition to vacate his guilty plea after learning that "the law enforcement officer responsible for the investigation that led to the defendant's arrest and guilty plea himself later pled guilty to having defrauded the justice system in connection with his duties as an officer."  *Id.* at 462.  Specifically, over a year after Fisher had pled guilty to being a felon in possession of a firearm, the officer "was charged with various fraud and theft offenses related to his duties as a DEA officer, including falsely attributing information to a confidential informant with whom he was splitting reward money."  *Id.* at 463.  The officer pled guilty and admitted to making false statements in investigative reports and affidavits supporting applications for wiretaps, search warrants, and criminal complaints, including specifically in applying for the search warrant that led to Fisher's arrest and guilty plea.  *Id.*

In reversing the district court's decision to deny Fisher's petition, the Fourth Circuit explained that guilty pleas may be vacated as involuntary when (1) there has been "'some egregiously impermissible conduct'" that (2) "'influenced [the defendant's] decision to plead guilty or, put another way, . . . was material to that choice.'"  *Id.* at 465 (citations omitted).[16] The *Fisher* court held that this standard was satisfied since there was "gross police misconduct [that] goes to the heart of the prosecution's case," including a showing "that impermissible government conduct – an officer's deliberate lie that led to the warrant that led to the discovery of the evidence against [the defendant] – occurred."  *See id.* at 466-67.  The court explained that

---

[16]     Under this two-part test, a petitioner need not establish that the prosecutor knew of the misconduct at the time of conviction, since "[n]either the timing, nor the prosecution's good faith" are relevant to the inquiry.  *Fisher*, 711 F.3d at 467.  Likewise, a petitioner's "factual innocence" of the crime is not a "prerequisite to" granting the petition.  *Id.*

this result served "the important interest of deterring police misconduct," because if pleas cannot later be challenged "based on subsequently discovered police misconduct, officers may be more likely to engage in such conduct, as well as more likely to conceal it." *Id.* at 469.  Further, "public confidence in our judicial system" would be "undermine[d]" if guilty pleas obtained via severe police misconduct are allowed to stand.  *Id.* at 470.

*Fisher* concerned a conviction by a guilty plea rather than by trial but the Fourth Circuit did not purport to limit its holding to cases involving pleas.  Indeed, the Court's reasoning applies with equal force to convictions by trial that are tainted by police misconduct, which too would only encourage more police misconduct and undermine faith in the judicial system if left to stand.  *See id.* at 469-70.  Accordingly, a highly similar standard should apply here – i.e., the Court should consider whether (1) egregiously impermissible conduct (2) influenced or was material to the result at the pretrial suppression hearing or at trial.  *See id.* at 465-67.

As set forth below, this standard is easily satisfied here given the centrality of Gladstone's actions and testimony to Mr. Claridy's prosecution and conviction, and Mr. Claridy's conviction should therefore be vacated.  At a minimum, the Court should schedule an evidentiary hearing so that the scope of Gladstone's misconduct and its impact on Mr. Claridy's prosecution and conviction can be fully explored.

I.  **MR. CLARIDY'S CONVICTION SHOULD BE VACATED BECAUSE GLADSTONE'S EGREGIOUS POLICE MISCONDUCT WAS MATERIAL TO THE OUTCOME OF THE PRETRIAL SUPPRESSION HEARING AND TRIAL.**

Mr. Claridy's conviction should be vacated under *Fisher* because the newly discovered evidence of Gladstone's pervasive police misconduct makes it more likely than not that he committed egregious misconduct that was material to the outcome of Mr. Claridy's pretrial suppression hearing and trial.  *See, e.g.*, *Hall*, 30 F. Supp. 2d at 889 (preponderance standard applies to § 2255 petitions).  Indeed, as set forth below, that Gladstone's penchant for extreme

14

misconduct was not known to the parties or the Court itself had a material impact on the Court's pretrial rulings and the guilty verdict rendered against Mr. Claridy. For these reasons, Mr. Claridy's due process rights were violated, and his conviction should be vacated under § 2255. *See Fisher*, 711 F.3d at 464-69.

### A.     Gladstone Committed Egregious And Impermissible Misconduct.

As a threshold issue, there can be no doubt that the pervasive misconduct that Gladstone engaged in while with the BPD qualifies as egregious and impermissible. While neither the parties nor the Court knew about this at the time of Mr. Claridy's arrest and trial, it is now undisputed that Gladstone was a severely corrupt police officer who repeatedly planted evidence to provide a basis for false arrests and otherwise practiced extreme dishonesty.

Specifically, Gladstone has now admitted to planting evidence against a suspect in an attempt to help the also severely corrupt Jenkins escape responsibility for intentionally running the suspect over. (Gladstone Plea Agreement at 8-9.) Gladstone later conspired with another officer who participated in the evidence planting to lie about the event, further indicating a propensity for dishonesty and a willingness to break the law and obstruct investigations. (*See id.* at 9.) In addition, indictments and guilty pleas of officers who served alongside Gladstone have revealed that Gladstone (1) misappropriated cocaine that had been seized by the BPD and participated in a scheme to sell it for profit (*see* Rivera Plea Agreement at 8-9); and (2) planted cocaine in a suspect's truck to justify his arrest, retroactively construct probable cause for a search and help impose an unjust 10-year prison sentence (Hankard Superseding Indictment at 6-9). Finally, since Mr. Claridy's trial, a number of other victims of Gladstone's corrupt policing have alleged that he planted evidence and was a participant in false arrests. *See, e.g.*, *Burley*, 422 F. Supp. 3d at 998-1000 (collecting alleged examples of misconduct by Gladstone and Jenkins); *see also United States v. Atkinson*, 429 F. Supp. 880, 885-87 (E.D.N.C. 1977) (granting § 2255

petition, finding *inter alia*, that evidence from a different judicial decision supporting a finding that same witness provided biased testimony was additional new evidence that justified vacatur).[17]

All of this is highly similar to, if not worse than, the conduct that was deemed egregious and impermissible in *Fisher*.  Indeed, whereas the police officer in *Fisher* had admitted to a pattern of falsifying information in affidavits and investigative reports, *see* 711 F.3d at 463, here there is evidence that Gladstone not only had a propensity for lying, but that he repeatedly went even further and ***planted evidence against*** suspects to secure wrongful arrests and convictions.[18]

For these reasons, Gladstone's wrongful actions as a BPD officer satisfy the requirement of egregious and impermissible conduct.

### B.      The Egregious Misconduct Was Material To Mr. Claridy Being Convicted.

Gladstone's egregious police misconduct was also material to Mr. Claridy being convicted for two reasons.  First, in light of what is now known about Gladstone's history of corruption, the Court should conclude that he more likely than not committed egregious

---

[17]      It further bears emphasizing that Gladstone was apparently the mentor of Jenkins, the leader of the scandalous GTTF and possibly the most corrupt ex-BPD officer recently indicted and convicted.  *See Burley*, 422 F. Supp. 3d at 998.  It appears that Gladstone and Jenkins regularly worked together and made arrests together, *see id.*, and it is possible that the two engaged in countless acts of corruption that have never come to light.  In any event, it stands to reason that as Jenkins's mentor, Gladstone, at least aided and encouraged Jenkins's outrageous conduct, which in and of itself demonstrates severe dishonesty.  Indeed, Gladstone has admitted to attempting to help Jenkins conceal at least one act of violence against a suspect, in addition to teaming with Jenkins on at least one other occasion to violate a suspect's constitutional rights, as discussed herein.

[18]      The fact that Gladstone has not yet admitted to committing these wrongful acts toward Mr. Claridy specifically does not mean that his conduct has not been egregious and impermissible.  And as set forth below, Gladstone's misconduct is material to this case even though he has not yet admitted to making false statements or planting evidence against Mr. Claridy.

misconduct that was material to Mr. Claridy's case. Second, that Gladstone's propensity to lie and plant evidence was not known at the time of Mr. Claridy's pretrial hearing and trial itself was material to Mr. Claridy being convicted because there is a reasonable probability that essential evidence of guilt would have been excluded or discredited at trial.

        1.     <u>Gladstone More Likely Than Not Committed Egregious Misconduct That Was Material To Mr. Claridy's Conviction.</u>

To be entitled to relief under § 2255, Mr. Claridy must show by a preponderance of evidence (i.e., more likely than not) that his constitutional rights were violated in his conviction. *See, e.g.*, *Hall*, 30 F. Supp. 2d at 889. Here, the Court can easily conclude that it is more likely than not that Gladstone committed egregious misconduct that materially affected Mr. Claridy's case. The evidence discussed above shows that Gladstone repeatedly engaged in deceitful acts of corruption, including planting evidence against multiple suspects to secure false arrests and convictions and cover up his and others' illegal acts. This alone makes it highly likely (and certainly more likely than not) that he did the same in Mr. Claridy's case, and that Mr. Claridy has been truthful in maintaining from the very beginning that Gladstone lied about his alleged confession, planted the heroin and gun that were allegedly found at the Stemmers Run house and fabricated the basis for the initial search warrant.

Further, the significant inconsistencies in Gladstone's description of the events surrounding Mr. Claridy's arrest provide strong circumstantial evidence that Gladstone's propensity to lie and plant evidence did not spare Mr. Claridy's wrongful arrest and conviction. Most notably, in his various sworn statements, Gladstone has told at least ***four different stories*** regarding Mr. Claridy's alleged confession to possessing heroin and a gun at the Stemmers Run house – which ranged from Mr. Claridy allegedly confessing to both the heroin and gun to Gladstone personally, to Mr. Claridy making no confession to the heroin at all, and everything in

between.  (*Compare* 7/1/08 Trial Tr. (ECF No. 82) 126:17-127:20, 166:7-11 (Gladstone

testifying at trial that Mr. Claridy confessed ***to Gladstone*** about both the heroin and gun while

inside the Stemmers Run house); *with* 12/17/07 Hr'g Tr. (ECF No. 78) 62:20-63:8 (testifying at

pretrial hearing that Mr. Claridy confessed to possessing both items ***only to Malone*** at the

Stemmers Run house and previously to just the gun to Gladstone); *and with* 5/23/07 Report of

Investigation Re: Summary Report Statements of Timothy Claridy at 3 (Gladstone's written

report to the DEA stating that Mr. Claridy confessed ***only to the heroin to Malone*** at the

Stemmers Run house and previously to ***just the gun to Gladstone***) (attached as Ex. 6); *and with*

5/23/07 Aff. of K. Gladstone in Supp. of Claridy Criminal Complaint at 4-5 (mentioning alleged

confession to gun but not heroin) (attached as Ex. 7).)[19]

        The fact that Gladstone omitted ***any mention*** of Mr. Claridy's alleged confession to

possessing heroin in his written reports (*see id.*; 7/1/08 Trial Tr. (ECF No. 82) 166:3-11) is

particularly striking.  When asked on cross-examination why that day "in open court for the first

time [Gladstone] sa[id] that now Mr. Claridy told [him] heroin was in the closet," Gladstone

answered that trial was "the first time it was asked and I had a reason to tell you." (*Id.*)  This

answer strongly suggests dishonesty, since one would think that a defendant confessing to

possessing a large amount of heroin, if true, would be a detail that would be included in a police

report.  These inconsistencies, coupled with the evidence of pervasive egregious misconduct by

---

[19]        As an additional inconsistency, Gladstone states in different police reports that he raided
and searched the Stemmers Run house and a different location (1037 Marlyn Avenue) at the
exact same time.  (*Compare* 5/23/07 Summary Report Arrest of Timothy Claridy, Execution of
S&S Warrants at 5-6 (Gladstone's written report to DEA summarizing raid of Stemmers Run
house stating that the raid occurred at approximately 2:15 pm on May 22, 2007 and that the
scales and paperwork were recovered at 2:30 pm) (attached as Ex. 9) *with* 5/23/07 Summary
Report Execution of S&S Warrant at 1037 Marlyn Avenue (similar report by Gladstone stating
that he and others seized evidence from different location at 2:30 pm on May 22, 2007)
(attached as Ex. 10).)

Gladstone that has now surfaced, make it more likely than not that Gladstone in fact made false statements and planted evidence in Mr. Claridy's case, and that this was material to Mr. Claridy's conviction.

Finally, and in any event, the fact that Gladstone has not as of yet admitted to specifically planting evidence or making false statements in Mr. Claridy's case (the latter of which occurred in *Fisher*) does not foreclose a finding of materiality.  Rather, courts have made clear that newly discovered evidence of egregious police misconduct does not have to specifically concern the petitioner's case to justify vacating a conviction, so long as the new evidence sufficiently undermines the credibility of testimony that was critical to securing the conviction.  *See, e.g.*, *Williams v. United States*, 500 F.2d 105, 108 (9th Cir. 1974) (ordering a new trial under § 2255 where the defendant's "conviction [was] based substantially upon tainted evidence" because a key officer witness at the petitioner's trial later pled guilty to perjury relating to "an investigation similar in nature and contemporaneous in time to the investigation of [defendant]"); *Jones v. United States*, No. 4:10-CV-1748 (CEJ), 2010 WL 4681422, at *1 (E.D. Mo. Nov. 10, 2010) (on a joint motion by defendant and the government, vacating a possession with intent to distribute conviction secured after a jury trial, under § 2255, after the primary officer who testified as to the charges was convicted of several unrelated felony offenses regarding corrupt activities as a police officer); *see also United States v. Battle*, Nos. 92-6077, 93-6009, 1994 U.S. App. LEXIS 11754, at *7, 10 (6th Cir. May, 19 1994) (ordering a new trial under Rule 33 where the officer who provided "pivotal" testimony in the defendant's case pled guilty to charges of officer corruption in unrelated investigations that occurred around the time of the defendant's arrest, even though there was "no evidence that [the officer] altered or falsified any of the information presented at [the defendant's] trial").

19

In one particularly analogous case, *Holmes v. United States*, No. 4:08-CV-1142 (CEJ), 2011 WL 4445702, at *1-2 (E.D. Mo. Sept. 26, 2011), a jury convicted the defendant for possession with intent to distribute cocaine following a trial in which the testimony of two police officers provided essentially all of the evidence of guilt. *Id.* at *1-2.  Several years later, new evidence arose showing that these officers were corrupt and dishonest, when one was investigated for making false statements in search warrant affidavits and perjury at trial, and the other pled guilty to stealing seized property and making false statements.  *Id.* at *3.  Even though none of this misconduct specifically involved Holmes or his trial, the court held that the officers' credibility as witnesses had now "been discredited" such that "the government would not have been able to meet its burden of proof" in Holmes's trial.  *Id.* at *6.  The court observed, *inter alia*, that "no witness other than" these officers had testified to crucial facts needed for conviction.  *Id.* at *4.  The court accordingly granted Holmes's § 2255 petition and vacated his conviction.  *Id.* at *6.  The situation here is virtually identical and the same result should follow.

2.     The Lack Of Knowledge Of Gladstone's Egregious Misconduct Was Material To The Result At The Pretrial Suppression Hearing And At Trial.

Under the standard the Fourth Circuit set forth in *Fisher*, egregious misconduct is material if it "'influenced [the defendant's] decision to plead guilty,'" or in other words, if there is "'a reasonable probability that'" the defendant would not have pled guilty "'but for the misconduct.'" 711 F.3d at 465, 467-68 (citations omitted); *see also, e.g.*, *United States v. Bagley*, 473 U.S. 667, 682 (1985) (favorable evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different").  Here, that Gladstone's history of corruption was not known to the parties or the Court was material to the outcome in Mr. Claridy's case in several ways.

20

**First**, the lack of knowledge of Gladstone's misconduct was material to the admission of essential evidence against Mr. Claridy.  At the pretrial hearing, the Court considered several motions to suppress by the defendants and denied them mostly because it found "no basis" to question Gladstone's credibility.  (*See, e.g.*, 12/17/07 Hr'g Tr. (ECF No. 78) 79:22-80:12, 92:4-25.)  Plainly, if Mr. Claridy had been able to present the extensive evidence now available showing that Gladstone is corrupt and dishonest, the Court would have had a basis to question Gladstone's credibility.  Without presuming how the Court would have ruled, petitioner respectfully submits that there is at least a reasonable probability that the Court would have ruled differently had it known about Gladstone's proclivity for corruption given that these motions directly implicated Gladstone's credibility.  Granting the defendants' motions would either have suppressed the evidence gained as a result of executing the search warrant (i.e., Mr. Claridy's alleged confession and the items found at the Stemmers Run house) or required the government to reveal the identity of Gladstone's supposed confidential informant, which could have proven that Gladstone lied about the informant or provided other serious grounds to question his credibility.  In either case, the result at trial would have been materially affected.

**Second**, the lack of knowledge of Gladstone's penchant for corruption and dishonesty also greatly affected Mr. Claridy's trial itself, which entirely turned on Gladstone's credibility as a witness.  Specifically, Gladstone alone testified that he witnessed Mr. Claridy engage in apparent drug transactions – testimony that was never corroborated with photographs or other evidence.  (*See* 7/1/08 Trial Tr. (ECF No. 82) 166:18-167:6 (Gladstone did not take photographs or stop the alleged purchasers to verify heroin was sold), 168:5-22 (similar).)[20]  It was also

---

[20]    An alleged confidential informant purportedly witnessed Claridy selling heroin, but that person obviously did not testify, and Gladstone claims that he lost the notes where he had

Gladstone's testimony alone that established Mr. Claridy's alleged confession to the existence of heroin and a loaded gun at the Stemmers Run house – evidence the government characterized as critical at trial.  (*See* 6/30/08 Trial Tr. (ECF No. 81) 44:14-18.)  Most crucially, Gladstone alone testified to having found the bag of heroin and loaded gun at the Stemmers Run house.  Nobody testified to seeing Gladstone purportedly find these items, and there is nothing beyond Gladstone's say so establishing that they were in fact recovered from Mr. Claridy's closet rather than planted.  Indeed, Officer Malone, who could have perhaps corroborated Gladstone's testimony that Mr. Claridy confessed to possessing these items, was not called to testify.  And there is no fingerprint evidence that might have established Mr. Claridy's possession of either the gun or heroin; there were no fingerprints on the gun, and even though Gladstone has submitted drug packaging for fingerprint testing in other cases (7/1/08 Trial Tr. (ECF No. 82) 133:22-134:7), he never submitted the heroin packaging for testing, ostensibly because of Mr. Claridy's alleged confession (*see id.* 133:4-13).[21]

In short, Gladstone's credibility was central to Mr. Claridy's conviction but is now destroyed given what has been revealed about his history of corruption.  Thus, there is a reasonable probability that a different result would have occurred at trial (including possibly on Mr. Claridy's motion for acquittal) had Gladstone's propensity for corruption and dishonesty been known at the time.  *Accord Holmes*, 2011 WL 4445702, *6 (vacating conviction under § 2255 where police officers who provided essential testimony had "been discredited" by

---

memorialized information from the informant.  (*See* 12/17/07 Hr'g Tr. (ECF No. 78) 77:10-78:4.)

[21]    Likewise, there was no DNA analysis conducted on clothing from Mr. Claridy's alleged closet where the heroin and handgun were allegedly found.  (7/1/08 Trial Tr. (ECF No. 82) 169:1-3.)

revelations about their corruption such that the government would not have been able to meet its burden of proof with the remaining evidence"); *Atkinson*, 429 F. Supp. at 885 (newly discovered evidence undermining key witness's credibility justified vacatur where the witness's "credibility and the jury's belief in the truthfulness of his testimony were essential to a finding of Atkinson's guilt"); *United States v. Lipowski*, 423 F. Supp. 864, 867 (D.N.J. 1976) (new evidence undermining key witness credibility "could have been the proverbial 'straw that broke the camel's back' . . ., which would have almost assuredly resulted in a different verdict by the jury") (citation omitted).

\*      \*      \*

For the foregoing reasons, it is more likely than not that Gladstone committed egregious police misconduct that was material to Mr. Claridy's case, and the fact that none of the now available evidence of Gladstone's misconduct was known at the time was itself material to Mr. Claridy being convicted.  Accordingly, egregious government conduct violated Mr. Claridy's due process rights and his conviction should be vacated under § 2255.  *See Fisher*, 711 F.3d at 464-69.[22]

---

[22]      If the Court does not find that relief is warranted under *Fisher*, it should instead vacate Mr. Claridy's conviction because:  (1) the evidence of Gladstone's misconduct discussed herein is "'newly discovered, i.e., discovered since the trial'"; (2) Mr. Claridy's "'diligence'" with respect to the new evidence can be inferred; (3) the evidence is not "'merely cumulative or impeaching'"; (4) the evidence is "'material to the issues involved'"; and (5) "'the newly discovered evidence would probably produce an acquittal.'"  *See, e.g.*, *United States v. Fulcher*, 250 F.3d 244, 249 (4th Cir. 2001) (citing *United States v. Custis*, 988 F.2d 1355, 1359 (4th Cir. 1989)).  Courts have applied these factors in considering § 2255 petitions filed on the basis of newly discovered evidence of police misconduct.  *See, e.g.*, *Holmes*, 2011 WL 4445702, at *4 (applying materially identical standard to grant Section 2255 petition where newly discovered evidence of police misconduct undermined key testimony).  And these factors are easily satisfied here for all of the reasons explained above.  In particular, the Court can infer Mr. Claridy's diligence because Mr. Claridy promptly filed his § 2255 petition, within a year after discovering the new evidence, and because his counsel attempted to attack Gladstone's credibility based on the minimal evidence of misconduct that was available at the time.  The newly discovered

## II.   THE COURT SHOULD, AT A MINIMUM, SCHEDULE AN EVIDENTIARY HEARING TO EVALUATE THE IMPACT OF THE NEWLY DISCOVERED EVIDENCE OF GLADSTONE'S MISCONDUCT ON MR. CLARIDY'S CASE.

If the Court does not vacate Mr. Claridy's conviction based on the newly discovered evidence of Gladstone's misconduct, it should at least order an evidentiary hearing so that it can fully evaluate the new evidence and its impact on Mr. Claridy's case.  *See, e.g.*, *United States v. Biberfeld*, 957 F.2d 98, 103-05 (3d Cir. 1992) (granting evidentiary hearing on § 2255 petition so that petitioner's allegations, based on new evidence, that key government officer committed perjury at trial, could be tested); *Humphrey v. United States*, 888 F.2d 1546, 1549-50 (11th Cir. 1989) (granting evidentiary hearing on § 2255 petition where the trial record was "inadequate to show *conclusively*" that critical evidence "w[as] not falsified"); *United States v. Silvers*, 888 F. Supp. 1289, 1298, 1305 (D. Md. 1995) (explaining that the court had held an evidentiary hearing for § 2255 petition to assess impact of key witness's perjury and proceeding to vacate conviction), *vacated in part on other grounds* 90 F.3d 95 (4th Cir. 1996); *United States v. MacDonald*, No. 3:75-CR-26-F, 5:06-CV-24-F, 2011 U.S. District LEXIS 107625, at *2 (E.D.N.C. Sept. 21, 2011) (ordering an evidentiary hearing on § 2255 petition).

Section 2255 itself makes clear that an evidentiary hearing is required unless "the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  And at least one appellate court has held in similar circumstances that when newly discovered evidence suggesting a key witness's perjury is at issue, it is an abuse of discretion to not at least conduct an evidentiary hearing to determine whether "[t]he new evidence . . . extends

---

evidence is not cumulative because it does not duplicate evidence presented at Mr. Claridy's trial and is highly probative.  And since Gladstone's now untrustworthy testimony was the linchpin of Mr. Claridy's conviction, the new evidence is material, not merely impeaching and would probably produce an acquittal in a new trial.  *See, e.g.*, *id.* at *4-6.

beyond that of mere impeachment and it might be likely to lead to [the petitioner's] acquittal in a second trial." *United States v. Espinosa-Hernandez*, 918 F.2d 911, 913-14 (11th Cir. 1990) (district court abused its discretion in denying motion for discovery into allegations of misconduct and possible perjury by a customs agent who "had a tremendous impact on Espinosa's conviction" because "[w]ithout the benefits of discovery and an evidentiary hearing, it is impossible to say that evidence of Urso's misconduct is merely impeaching").

In particular, while petitioner believes that the existence of evidence of Gladstone's pervasive and egregious misconduct (in addition to the inconsistencies in his testimony discussed above) requires vacating Mr. Claridy's conviction, an evidentiary hearing could potentially adduce direct evidence of false statements and/or evidence planting specifically in Mr. Claridy's case. Accordingly, the Court should, at a minimum, schedule an evidentiary hearing.

## **CONCLUSION**

For the foregoing reasons, the Court should vacate Mr. Claridy's conviction, or at a minimum, schedule an evidentiary hearing to further evaluate the extent to which police misconduct resulted in Mr. Claridy's wrongful conviction.

Respectfully submitted,

JAMES WYDA
Federal Public Defender

_____/s/_____
PARESH S. PATEL
Assistant Federal Public Defender
6411 Ivy Lane, Ste. 710
Greenbelt, Maryland
(301) 344-0600
paresh_patel@fd.org

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 1st day of March 2021, a copy of the foregoing

pleading was delivered via electronic filing to Leo Wise, Assistant United States Attorney,

Office of the United States Attorney, 36 Charles Street, 4th Floor, Baltimore, Maryland 21201.


_____/s/_____
PARESH S. PATEL